IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Penelope J. Skipper,      Case No. 3:12 CV 2005

           Plaintiff,     MEMORANDUM OPINION AND ORDER

    -vs-

    JUDGE JACK ZOUHARY

Commissioner of Social Security,

           Defendant.

## INTRODUCTION

Plaintiff Penelope Skipper timely filed a Complaint (Doc. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction under 42 U.S.C. § 405(g).

This case was referred to Magistrate Judge Armstrong for a Report and Recommendation ("R&R") pursuant to Local Rule 72.2(b)(2). Following briefing (Docs. 12 & 15), the Magistrate Judge recommended this Court affirm the final decision of the Commissioner to deny Plaintiff's claim for DIB and SSI (Doc. 16).

This matter is now before this Court on Plaintiff's Objection to the R&R (Doc. 17) and Defendant's Response (Doc. 18). Pursuant to *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) &(C), this Court has reviewed de novo the Magistrate Judge's findings. For the reasons below, this Court adopts the R&R and affirms the Commissioner's denial of benefits.

**BACKGROUND**

The R&R accurately states the relevant factual and procedural background from the administrative record, which this Court adopts (Doc. 16 at 2–15). Briefly, Plaintiff was 48 years old at the time of her administrative hearing in September 2011 (*id.* at 36). Plaintiff suffers from a myriad of health problems, but the issues raised in the Objection center on her mental impairments; specifically, her asserted inability to interact socially and communicate (*id.* at 21; Doc. 17 at 2). She does not object to the R&R findings as to her physical impairments. Her objection focuses on the alleged failure to properly weigh the record evidence and to consider certain medical records in upholding the denial of benefits.

Plaintiff references the opinion of one of her treating psychologists, Dr. Charles Jackson, who examined Plaintiff in May 2009 and May 2010. Dr. Jackson recorded nothing notable regarding her ability to socialize and communicate in 2009 (*see* Doc. 10, AR at 233–38), but in 2010 indicated Plaintiff had issues related to social functioning, including the "[in]ability to consistently function socially and [] communicate with others without major problems arising" (*id.* at 316). In addition, Plaintiff references a one-page questionnaire filled out in March 2010 by an individual with Health Care Partners of South Carolina ("HCP"). Although the signature on the page is indecipherable and does not indicate whether the signor is a physician, the questionnaire indicates Plaintiff has poor concentration and attention, and is depressed (*id.* at 295). She claims these limitations (combined with her physical ones to which she filed no objection) render her disabled under the Social Security Act.

In Feburary 2010, Plaintiff filed for DIB and SSI benefits (Doc. 10 at 128). The claim was denied initially and upon reconsideration. In September 2011, Plaintiff, represented by counsel,

2

appeared before an administrative law judge ("ALJ"). A vocational expert ("VE") testified at the hearing (*id.* at 48). The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work, with some limitations due to her physical and psychological conditions, and was not under a disability as defined in the Social Security Act during the relevant period (*id.* at 16–24). The Appeals Council denied Plaintiff's request for review, and she timely filed an action seeking judicial review of the Commissioner's final decision.

**STANDARD OF REVIEW**

In reviewing the denial of DIB and SSI, this Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citing 42 U.S.C. § 405(g)); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) ("[R]eview of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings . . . are supported by substantial evidence."). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings as to any fact, if supported by substantial evidence, "shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)).

Even if substantial evidence, or indeed a preponderance of the evidence, supports a claimant's position, this Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Procedural errors, however, can be a basis for overturning the decision of the Commissioner, even if that decision

3

is supported by substantial evidence. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## DISCUSSION

Plaintiff makes two objections to the R&R. First, Plaintiff contends the ALJ's RFC finding, that Plaintiff can perform light work with certain limitations, is not supported by substantial evidence in light of Dr. Jackson's 2010 opinion noting some difficulties with social interaction and depression (Doc. 17 at 2). She argues the ALJ improperly discounted Dr. Jackson's 2010 opinion in favor of other evidence, especially because he was the only treating psychologist to testify. Second, she contends the ALJ failed to weigh the HCP records, and this error requires remand.

**The Mental RFC Finding**

Plaintiff's mental health and corresponding ability were evaluated by three examiners: Dr. Jackson in May 2009 and May 2010; Dr. Michael Neboschick, a state examiner, in May 2010 (Doc. 10 at 311); and Dr. Kimberlie Brown, a state examiner, in October 2010 (*id.* at 367). Only Dr. Jackson examined Plaintiff in person, and Plaintiff faults the ALJ for discounting Dr. Jackson's opinion in favor of the opinions of Drs. Neboschick and Brown (neither of whom found Plaintiff to have the kinds of limitations Dr. Jackson found), and for not explaining why Dr. Jackson's opinion did not warrant controlling weight. Plaintiff's objection is misplaced, however, because the ALJ did explain the reasons for weighing all the record evidence.

The ALJ found substantial record evidence that Plaintiff could, and in fact did, interact socially with others on a regular basis. For example, the ALJ noted Plaintiff traveled with a companion everywhere she went, which establishes her ability to maintain relationships (*id.* at 21). The ALJ also noted that during both of Plaintiff's visits, Dr. Jackson noted that Plaintiff's interactions

4

with him were "compliant," her "eye contact was appropriate," her "attitude was cooperative," and "rapport was easy to establish and maintain" (*id.* at 21, 236, 315). Further, the ALJ relied on Plaintiff's own statement that she "got along well with authority figures and that she had never been fired or laid off from a job because of problems getting along with people" (*id.* at 18).

Finally, the ALJ referenced the opinions of Drs. Neboschick and Brown, who found Plaintiff to have less severe social interaction limitations than did Dr. Jackson, and noted their opinions should be given great weight because "they are consistent with the record as a whole" (*id.* at 21). Dr. Neboschick found that Plaintiff was not significantly limited in her ability to ask simple questions, request assistance, accept simple instructions and respond appropriately to criticism from supervisors, get along with coworkers, maintain socially acceptable behavior, and adhere to basic standards of neatness and cleanliness (*id.* at 333–35). Dr. Brown's assessment was similar (*see id.* at 367–69).

The ALJ weighed all the evidence from these doctors, in addition to Plaintiff's own testimony and other medical records, in reaching the conclusion that Plaintiff, despite her mental and physical limitations, could perform light work with some restrictions (*id.* at 19–22). Although Dr. Jackson's 2010 opinion indicates Plaintiff was having social interaction issues, looking to the record as a whole, substantial record evidence supports the ALJ's finding that Plaintiff was not so limited. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992) ("In determining whether the [Commissioner's] factual findings are supported by substantial evidence, we must examine the evidence in the record taken as a whole."). Behind the rhetoric, Plaintiff is really asking this Court to reweigh the evidence presented to the ALJ, which is not the proper province of this Court. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (noting a federal court "may not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility").

**HCP Records**

Plaintiff's second objection is that the ALJ, relying on a worksheet completed by someone at HCP in March 2010, failed to assign it a specific evidentiary weight. Plaintiff claims this worksheet should have been assigned controlling weight as a treating source opinion.

The worksheet indicates Plaintiff is depressed, has "poor" attention and concentration, a "slowed" thought process, and a "serious" work-related limitation due to mental condition (AR at 295). There is no discussion or explanation of the basis for circling these words, and there is no indication of ongoing treatment related to these findings. The signature on the line labeled "physician's signature" is illegible and bears no indication of the signor's status as a medical professional (i.e., "MD" or "RN"). The ALJ cited this worksheet twice in its decision, noting the findings aligned with those of Dr. Jackson, but did not regard the document as a treating source opinion.

"An ALJ must give a treating source opinion controlling weight if the treating source opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Blakely*, 581 F.3d at 406–07. However, in order to assign controlling weight, the ALJ must first find the source to be a "treating physician." *Id.* at 407. If an opinion comes from someone other than an acceptable medical source, the ALJ may use that evidence, but is not required to evaluate it in the same formal way as acceptable medical sources. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *see* 20 C.F.R. § 404.1513(a) & (d).

Here, there is no reason to afford the HCP worksheet "treating physician" status. First, it is impossible to know whether the individual who signed the form was a physician or other reliable

medical source. Second, the worksheet lacks supporting diagnostic information regarding the findings, which casts doubt on its reliability. Finally, there does not appear to be other record evidence indicating HCP treated Plaintiff for any mental impairments -- indeed, all other records from HCP relate to physical impairments not raised in the Objection (*see* AR at 243–44, 371, 376).

Because there is no record indication the March 2010 HCP worksheet is from a treating source, the ALJ properly analyzed it as part of its evaluation of the entire record.

## CONCLUSION

The ALJ considered the medical evidence, Plaintiff's statements, and the opinions of three separate doctors to determine Plaintiff could perform a limited range of light work. Plaintiff's Objection (Doc. 17) is rejected, and this Court adopts the R&R (Doc. 16).

IT IS SO ORDERED.

          s/ *Jack Zouhary*
          JACK ZOUHARY
          U. S. DISTRICT JUDGE

July 31, 2013